IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER CLARK, as personal representative of the estate of Jeremy Clark,<br><br>    Plaintiff,<br><br>    v.<br><br>JOEY BAMBERGER, et al.,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:12cv1122-MHT<br>(WO) |

OPINION AND ORDER

Plaintiff Jennifer Clark, as personal representative of the estate of her deceased husband Jeremy Clark, filed this wrongful-death suit against defendants Rolls-Royce Corporation and its employee Joey Bamberger, Army Fleet Support, LLC, and L-3 Communications Corporation. Jurisdiction is proper under 28 U.S.C. § 1332 (diversity). Pending before the court is the parties' joint motion to seal the fairness hearing proceedings, which requests sealing of "all documents, transcripts and other records relating to

the fairness hearing proceeding." Motion to Seal (doc. no. 115) at 1.  For the reasons discussed below, the motion to seal will be denied, with the exception of two documents.

### I.   BACKGROUND

This case arises out of a tragic accident in which Jeremy Clark, a civilian helicopter-training pilot employed by the Army, was killed when the helicopter he was piloting crashed during a training exercise at Fort Rucker, Alabama.  Jennifer Clark brought this wrongful-death suit contending that defendants Rolls-Royce and Bamberger did not effectively troubleshoot the engine issue, and were therefore liable for the crash, and that L-3 Communications and Army Fleet Support, which played a role in maintaining the aircraft, also bore responsibility.

The defendants denied liability for the crash, asserted numerous defenses, and filed motions for summary judgment and to exclude plaintiff's expert

testimony. Plaintiff reached settlements with the defendants. Because decedent was survived by two minor children, who stand to inherit a portion of the settlements under Alabama law, the parties moved for appointment of a guardian ad litem for the children and for the court to hold a fairness hearing and approve the settlement. They also filed the motion, now before the court, to seal the fairness hearing and all related documents.

## II. DISCUSSION

### A. Applicable Law

"In most cases when the parties settle, the court does not examine or approve their agreements; the settlements are purely private contracts. However, when, as here, a settlement is approved by a court, the settlement becomes part of the judicial record." Stalnaker v. Novar Corp., 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003) (citations omitted).

Most documents filed in court are subject to the common-law right of access. "The operations of the courts and the judicial conduct of judges are matters of utmost public concern, ... and [t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." Romero v. Drummond Co., 480 F.3d 1234, 1245 (11th Cir. 2007). (internal citations and quotation marks omitted). "Beyond establishing a general presumption that criminal and civil actions should be conducted publicly, the common-law right of access includes the right to inspect and copy public records and documents." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001) (citing Nixon v. Warner Comm., Inc., 435 U.S. 589, 597 (1978)). "A motion that is 'presented to the court to invoke its powers or affect its decisions,' whether or not characterized as dispositive, is subject to the public right of access,"

4

Romero, 480 F.3d at 1246 (citations omitted), as is any "[m]aterial filed in connection with any substantive pretrial motion, unrelated to discovery," id. at 1245 (citations omitted).

The public's common-law right of access is not absolute, however, and "may be overcome by a showing of good cause." Id. "[W]hether good cause exists ... is ... decided by the nature and character of the information in question." Id. at 1246 (quoting Chicago Tribune, 263 F.3d at 1315). Courts deciding whether to seal documents must balance "the public interest in accessing court documents against a party's interest in keeping the information confidential." Id. In balancing these interests, "courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or

5

public concerns, and the availability of a less onerous alternative to sealing the documents."  Id.; see also Chicago Tribune, 263 F.3d at 1311 ("[A] judge's exercise of discretion in deciding whether to release judicial records should be informed by a sensitive appreciation of the circumstances that led to ... [the] production [of the particular document in question]." (citation omitted)).

In addition to the common-law right of access, the First Amendment provides the press and public a limited right of access to certain court proceedings.  It is unclear whether there is a First Amendment right of access to the documents and hearing at issue here.  See Wilson v. Am. Motors Corp., 759 F.2d 1568, 1569-70 (11th Cir. 1985) (discussing uncertain status of constitutional right of access to civil trials and concluding that "the question of whether or not there is a constitutional right of access to civil trials has not been answered by our court"); Chicago Tribune, 263 F.3d at 1310 ("The constitutional right of access has a

more limited application in the civil context than it does in the criminal. ... Nonetheless, this court has extended the scope of the constitutional right of access to include civil actions pertaining to the release or incarceration of prisoners and their confinement.") (citations omitted)). Were a constitutional right of access to apply, the parties would have to show that sealing is "necessary to achieve a legitimate purpose" and that less intrusive alternatives were considered; further, the court would need to ensure that the restriction on access was narrowly drawn. <u>Newman v. Graddick</u>, 696 F.2d 796, 802 (11th Cir. 1983) (citations omitted). As the parties here cannot meet even the lesser 'good cause' showing to overcome the common-law right of access, the court need not decide what the First Amendment requires here.

### B. Appropriateness of Sealing

The parties have moved to seal all documents, transcripts, and other records related to the fairness

7

hearing.  This request presumably would cover the motion to approve the settlement and attached settlement agreement and documents related to the formation of trusts for the minor beneficiaries; the guardian ad litem's report; the transcript of the fairness hearing; the order on the motion to approve the settlement agreement; and, arguably, the motion to seal and this order on the motion to seal.

The parties do not dispute that the documents at issue here are subject to the common-law right of access.  However, they contend that these documents contain "sensitive information relating to the privacy interests" of the minors, the disclosure of which "could cause harm to the minors."  Joint Motion to Seal Fairness Hearing Proceedings (doc. no. 115), at 1, 2.

Protecting the privacy of minors is undoubtedly an important concern.  The Federal Rules of Civil Procedure recognize the importance of protecting the privacy interests of minors by requiring that minors be referred to by only their initials in court filings.

Fed. R. Civ. P. 5.2(a)(3).  Going beyond this level of protection, courts have sealed proceedings and documents, including settlements, in litigation that exposes sensitive information about a child that could harm the child's future educational or employment prospects or that could cause the child great trauma or embarrassment.  For example, in a personal-injury case stemming from an aviation incident in which minors suffered injuries and emotional trauma, the court sealed the settlement agreement because "[t]he dollar amount of each minor's settlement implies the relative severity and expected duration of each minor's emotional and mental injuries (or lack thereof) in comparison to the other family members, and therefore may expose the minors to potential public ridicule and embarrassment in the community and could later make it more difficult for them to obtain employment." Mears v. Atl. Se. Airlines, Inc., No. 5:12-CV-613-F, 2014 WL 5018907, at *2 (E.D.N.C. Oct. 7, 2014) (Fox, J.). Similarly, courts have sealed settlement agreements and

9

other documents and proceedings in special-education and other cases where confidential educational and medical information about minors would be exposed. See, e.g., Wittenberg v. Winston-Salem/Forsyth Cnty. Bd. of Educ., CIV.A.1:05CV00818, 2009 WL 1684585, at *2–3 (M.D.N.C. June 16, 2009) (Osteen, J.) (granting motion to seal settlement agreement in part to protect the confidential educational records of minor student in special-education case); see also Webster Groves Sch. Dist. v. Pulitzer Pub. Co., 898 F.2d 1371, 1374-77 (8th Cir. 1990) (denying press access to proceedings and court file where doing so would expose child's allegedly criminal behavior, mental-health status, and disability-related information).

In this case, the settlement and other documents would not expose confidential educational, medical, or mental-health information about the minor children, and the financial information in the settlement would expose nothing about the children other than the amount of money they were to receive and that a wrongful-death

case stemming from the death of their father was settled. The parties argue that the disclosure of information related to the settlement could cause injury to the children. However, they do not explain or offer any evidence showing <u>how</u> it could cause injury, or what type of injury they fear--physical, emotional, or other. As a result, the court has no information upon which to assess "the degree of and likelihood of injury if made public." <u>Romero</u>, 480 F.3d at 1246. Further, "'[s]tereotyped and conclusory statements' do not establish good cause" for denying public access to court documents. <u>Id</u>. (citation omitted); <u>see also</u> <u>Press-Enter. Co. v. Superior Court</u>, 478 U.S. 1, 15 (1986) ("right of access cannot be overcome by ... conclusory assertion")). Therefore, the parties have not made a sufficient showing to overcome the common-law right of access.

Nor do other factors weigh in favor of sealing the documents. The parties argue that there is no less onerous alternative to sealing the documents, because

the names of the parents in the litigation make the children easily identifiable by their initials. However, as the parties have not shown that the documents would expose anything confidential under law or embarrassing about the children, the court finds the use of initials sufficient to protect the children's privacy in this circumstance. The parties also argue that this lawsuit is not a matter of public concern as it is between two private parties, and does not involve a public official. However, because this lawsuit involves the crash of a U.S. Army helicopter at an Army base and the alleged negligence of government contractors paid with public money, this lawsuit does to some extent involve a matter of public concern.

Finally, Rolls-Royce argues that (1) the parties agreed that the case would be sealed and (2) it would not have settled for the same amount of money had it not believed that the case would be sealed. The plaintiff disputes that the sealing of the case was a condition of the settlement; plaintiff's position is

supported by the lack of any reference in the parties' written agreement to the settlement being conditioned on sealing.

In any case, even if the parties had so agreed, that reason would not be sufficient to overcome the public's right of access.  The court certainly wishes to encourage settlement, recognizes that settlements are critical to the functioning of the federal courts, and knows that many defendants--and plaintiffs--value confidentiality in settlements.  Further, one could argue that allowing access to the settlement in this case could impair court functions in that it might discourage future settlements.  Nevertheless, the Eleventh Circuit has made clear that the parties' agreement to seal a settlement or other document is not a relevant consideration in the decision whether to seal.  As the appeals court observed in <u>Wilson v. Am. Motors Corp.</u>, 759 F.2d 1568, 1571 n.4 (11th Cir. 1985),

> "There is no question that courts should encourage settlements. However, the payment of money to an injured party is simply not "a compelling governmental interest" legally

13

> recognizable or even entitled to consideration in deciding whether or not to seal a record. We feel certain that many parties to lawsuits would be willing to bargain (with the adverse party and the court) for the sealing of records after listening to or observing damaging testimony and evidence. Such suppression of public records cannot be authorized."

For these reasons, the motion to seal will be denied, with the exception of two documents. The trust documents attached to the motion to approve the settlement agreement, which contain the minors' full names, shall remain sealed, as they were not filed in compliance with Federal Rule of Civil Procedure 5.2(a)(3).

***

Accordingly, it is ORDERED as follows:

   (1)  The joint motion to seal fairness hearing proceedings (doc. no. 115) is denied, with the exception of two documents.

(2) The motion to approve settlement and distribution of settlement proceeds (doc. no. 117) and exhibits to the motion are unsealed, except for Exhibits 4 and 5 (doc. nos. 117-4 and 117-5), which shall remain sealed.

(3) The report of the guardian ad litem (doc. no. 119) is unsealed.

DONE, this the 28th day of March, 2016.

                                       /s/ Myron H. Thompson
                                   **UNITED STATES DISTRICT JUDGE**