IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
JENNIFER CLARK, as            )
personal representative of    )
the estate of Jeremy          )
Clark,                        )
                              )
     Plaintiff,               )
                              )       CIVIL ACTION NO.
     v.                       )        1:12cv1122-MHT
                              )            (WO)
JOEY BAMBERGER, et al.,       )
                              )
     Defendants.              )
```

OPINION

Plaintiff Jennifer Clark, as personal representative of the estate of her deceased husband Jeremy Clark, filed this wrongful-death suit against defendants Rolls-Royce Corporation and its employee Joey Bamberger, Army Fleet Support, LLC, and L-3 Communications Corporation. Jurisdiction is proper under 28 U.S.C. § 1332 (diversity).

This case is before the court on the parties' joint motion to approve their settlement and the distribution of settlement proceeds. The parties seek the court's

approval because the decedent's two minor children will be recipients of part of the settlement. For the reasons discussed below, the settlement will be approved.

This case arises out of a tragic accident in which Jeremy Clark, a civilian helicopter-training pilot employed by the Army, was killed when the helicopter he was piloting crashed during a training exercise at Fort Rucker, Alabama. Defendant Rolls-Royce, the manufacturer of the helicopter's engine, had contracted with the Army to assist in troubleshooting technical problems with the type of engine used in decedent Clark's helicopter. There had been a technical problem with the engine days before the crash, and defendant Bamberger, a Rolls-Royce employee, was involved in troubleshooting the problem. Plaintiff Clark contends that Bamberger's failure to complete certain steps in troubleshooting the problem led to the crash. She also asserts that employees of defendants Army Fleet Support and L-3 Communications were involved in the inspection,

service, maintenance, and repair of the aircraft, and that their errors also led to the crash. The defendants denied liability for the crash, asserted numerous defenses, and filed motions for summary judgment and to exclude expert testimony offered by the plaintiff.

The parties have now settled all claims in the lawsuit. Plaintiff has agreed to settle her claims against Rolls-Royce and Bamberger in exchange for a payment of $ 8 million in full and final satisfaction of any and all claims that were or could have been asserted by plaintiff arising out of the accident. Plaintiff has also agreed to settle her claims against Army Fleet Support and L-3 Communications in exchange for a payment of $ 500,000 in full and final satisfaction of any and all claims that were or could have been asserted by her arising out of the accident. Rolls Royce has deposited its settlement funds with the clerk of court.

3

Under Alabama's wrongful-death statute, the decedent's two minor children will receive a significant part of this settlement. Accordingly, and based on a motion by plaintiff, the court appointed a guardian ad litem for the children and held an evidentiary hearing on the motion to approve the settlement.

At the hearing, the court heard testimony from the guardian ad litem and plaintiff, who is the children's mother. Both the children's mother and the guardian ad litem opined that the settlement was reasonable and fair and that the children's money would be well protected during their minority and beyond. The parties explained the proposed deposit of each child's portion of the settlement in a trust set up for that child and administered by an experienced trustee. The funds will be invested by the trustee and disbursed for each child's necessities if their mother cannot meet her duty of support, or, if she can, for any necessities beyond the mother's duty of support. Once

**4**

a child is over the age of 18, the trustee will begin to disburse funds to the child for educational expenses, the purchase of a car, and other major expenses as needed and in the discretion of the trustee.  Each child would begin to receive income from the trust at the age of 21.  At the age of 25, when the child has developed in maturity, the child will receive control of a significant portion of the principal; the child will receive another significant portion at age 30, and the remainder at age 35, at which point the trust will terminate.

The parties also explained that 40 % of the total settlement would go to pay plaintiff's counsel's fees, and that expenses would be also reimbursed from the settlement funds.  Fees and expenses will be deducted from the settlement funds before division of the remainder between plaintiff and the children.  The parties also represented that plaintiff will satisfy and resolve all liens and subrogation interests arising out of the accident using the settlement funds paid to

her, not the children's settlement funds.  Clark agreed
that the fees for the guardian ad litem would come out
of her funds, not the children's.

Having reviewed the pleadings, motions, briefs, and
evidence in this case and heard a detailed explanation
of the settlement, the court finds that all the terms
and provisions of the proposed settlement are in the
best interests of the minor children and are fair,
just, and reasonable under the circumstances involved
in this case.  It reaches this conclusion for several
reasons.

First, the case presented difficult legal issues
regarding causation, privilege, and expert testimony
that could have been decided against either side.
These included difficult questions regarding whether
the plaintiff could prove causation in the absence of a
definitive record of what caused the helicopter to
crash, and the novel question whether a governmental
privilege would prevent plaintiff's experts from
relying upon information from a redacted government

accident report that the government released to the plaintiff.  The court's resolution of the latter question would, in turn, have impacted whether plaintiff's experts could testify to causation at all. The settlement eliminated that uncertainty for all parties and the potential for many more years of litigation and attendant expense.

Second, the amount of the settlement was within the range of verdicts received in wrongful-death cases in Alabama.  Under Alabama's Wrongful Death Act, 1975 Ala. Code § 6-5-410, only punitive damages, not compensatory damages, are recoverable.  See, e.g., King v. Nat'l Spa and Pool Inst., Inc., 607 So. 2d 1241, 1246 (Ala. 1992).  Plaintiff points out a number wrongful-death verdicts in Alabama that were lower--or were reduced by the Alabama Supreme Court to an amount lower--than the total settlement here.  See, e.g., Mobile Infirmary Ass'n v. Tyler, 981 So. 2d 1077, 1106 (Ala. 2007) (reducing $ 5.5 million wrongful-death award to $ 3 million); Boles v. Parris, 952 So. 2d 364 (Ala. 2006)

7

(affirming $ 1.275 million wrongful-death award); Mack Trucks, Inc. v. Witherspoon, 867 So. 2d 307, 309 (Ala. 2003) (reducing $ 25 million wrongful-death award to $6 million); Lance, Inc. v. Ramanauskas, 731 So. 2d 1204, 1221 (Ala. 1999) (reducing $ 13 million wrongful-death award to $ 4 million); Tillis Trucking Co., Inc. v. Moses, 748 So. 2d 874, 887-891 (Ala. 1999) (reducing $ 7 million wrongful-death award to $ 1.5 million).

The value of these cases as comparators is somewhat limited by the differences in facts between those cases in this one.  For example, most of the cited cases involved defendants that (presumably) had far less wealth than Rolls-Royce, and the wealth of the defendant is a relevant--but not determinative--factor that juries may consider in determining the size of a punitive-damages award, and that courts may consider in reviewing the legality of such awards.  See Green Oil Co. v. Hornsby, 539 So. 2d 218, 223 (Ala. 1989) (listing the "financial position of the defendant" as a

relevant factor in determining the appropriateness of a jury's punitive-damage award); see also BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 591 (1996) ("Since a fixed dollar award will punish a poor person more than a wealthy one, one can understand the relevance of this factor to the State's interest in retribution."). Nevertheless, the cited cases are still of general value as comparators; further, the cases in which awards were reduced reflect the close scrutiny that courts apply to large punitive-damages awards. Indeed, even punitive-damages awards against very large corporations may be reduced on appeal. See, e.g., id. (reducing $ 2 million punitive-damages award against BMW because it was excessive); State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418-429 (2003) (finding $ 145-million punitive-damages award against State Farm excessive under Due Process Clause).

In light of these precedents and the difficult legal hurdles plaintiff faced in proving her case, the total settlement amount here is appropriate. Moreover,

the significantly higher settlement with the Rolls-Royce defendants makes sense, as the evidence (submitted with motions and briefs) was significantly stronger against them than against the other defendants.

The court also finds the trusts for each minor's portion of the settlement funds, as described on the record, to be in the best interest of the minor. The graduated release of trust funds seems eminently wise.

Finally, the court must scrutinize the reasonableness of the attorneys' fee contract, as it will affect the children's net recovery. "A district court abuses its discretion when it allows a fee without carefully considering the factors ... elaborated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)." Hoffert v. Gen. Motors Corp., 656 F.2d 161, 166 (5th Cir. 1981).[*]   These 12 Johnson factors are: (1) the

---

[*]   See Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that decisions of the former Fifth Circuit rendered prior to

time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717–19.

In light of the Johnson factors, the 40 % contingency fee in this case is reasonable.  First, this case clearly has required substantial time and labor from plaintiff's counsel.  Plaintiff's attorneys, over a period of several years, engaged in apparently extensive discovery (based on the evidence submitted

_____

close of business on September 30, 1981, are binding in the Eleventh Circuit).

with the briefing), filed motions to compel, retained and produced reports from three experts, and filed necessarily lengthy, well drafted briefs in response to multiple substantive and complex defense motions. In sum, this case has taken significant time that likely could have been devoted to other cases.

Furthermore, as discussed above, this case presents numerous difficult legal issues and has therefore required a very high level of skill to litigate effectively; plaintiff's attorneys, who are highly skilled in the court's estimation, have done so. They obtained a good result for their client.

Alabama's rules of professional conduct do not set an upper limit for contingency fees, instead requiring that they not be "clearly excessive." Ala. R. Prof. Con. 1.5(a). As stated at the hearing, plaintiff's counsel has expended hundreds of thousands of dollars on the pretrial litigation of this case. "When an attorney accepts a client on a contingent-fee basis, the attorney assumes the risk of nonpayment for

expenses and is acting at his own peril.   'If someone is willing to take the great risk of giving up the sure quantity for the uncertain, and wins, then the uncertain prize should be worth more than the certain one.'"   <u>Madison Cnty. Dep't of Human Res. v. T.S.</u>, 53 So. 3d 38, 56 (Ala. 2009).   Here, plaintiff's counsel faced a considerable risk of not recovering at all due to the highly circumstantial nature of the evidence in the case.   Given this risk, the high cost of litigating the case, and the skill with which it was litigated, 40 % is not excessive.

An appropriate judgment will be entered.

DONE, this the 28th day of March, 2016.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**